UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| MARGARET ELAINE RAND, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-0462 (ESH) |
| SECRETARY OF THE TREASURY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Margaret Rand has sued the Secretary of the Treasury ("Secretary") in his official capacity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. The Secretary now moves to dismiss or, in the alternative, for summary judgment, arguing that Rand failed to file a complaint within forty-five days of the alleged discriminatory event. For the reasons stated below, the Secretary's motion for summary judgment will be granted.

## BACKGROUND

At all times relevant to the case, Rand worked as a GS-13 "management analyst" in the Office of Strategic Planning and Evaluation at the Department of the Treasury. (Am. Compl. ¶¶ 2, 7.) In her administrative complaint, Rand alleged that she was "always being given more work than others similarly situated, yet always being paid at one full grade level lower than all of those employees." (Def.'s Mot. to Dismiss, Ex. 1 ("EEO Complaint"), at 4.) She alleges that from 1998-2002, her "male and substantially younger co-workers" held GS-14 level positions

despite performing "equal work requiring skill, responsibility and effort under similar working conditions." (Am. Compl. ¶ 7.)

In a declaration attached to her opposition, Rand states that in September 1999 she asked her supervisor, John Murphy, what she "could do to advance to the grade 14 level." (Pl.'s Opp'n, Decl. of Pl. ("Pl.'s Decl.") ¶ 4.) Murphy informed her that she "would need to take on some bureau assignments." (*Id.*) Rand alleges that she "often held discussions" with her supervisor about her GS-13 status and that she suffered from "not having respect of my colleagues" because she was a "lower-level employee." (EEO Complaint at 4-5.) Rand acknowledges that her colleagues were "paid at the grade 14 level," but argues nonetheless that the agency "had no legitimate, non-discriminatory reason" for paying her less. (Am. Compl. ¶ 7.) Rand states that in "late 2000," her team leader supported her "promotion" to grade 14, but her request was denied by Murphy. (Pl.'s Decl. ¶ 6.) Although Murphy allegedly agreed to a desk audit to determine whether she "was working at the grade 14 level" (Am. Compl. ¶ 5),[1] Rand never received the results of the audit.[2] (Pl.'s Decl. ¶ 6.) Murphy retired in January 2002. (Def.'s Mot., Ex. 2 ¶ 6.)

Rand alleges that after the agency failed to conduct the "desk audit," she filed a "timely administrative complaint" with the Office of Equal Employment Opportunity ("EEO"). (Am.

---

[1] A desk audit is a process by which an employee may request "her work to be reviewed." *Williams v. Dodaro*, No. 07-1452, 2011 WL 3835667, at *1 n.2 (D.D.C. Aug. 31, 2011). "[I]f, in the eyes of the reviewers, that work is at a level higher than that at which the employee is currently graded, the employee will be promoted to the level" that is reflected by her performance. *Id.* This is sometimes called an "accretion of duties" promotion, because the desk audit is meant to trigger a promotion to match the employee's "accretion of duties" over time. *See Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009)

[2] Although Rand suggests that there is an issue of material fact as to whether there was a desk audit (Pl.'s Statement of Material Facts As to Which There Are Genuine Issues ("Pl.'s Issues") ¶ 3), the Secretary admits that no audit was ever performed. (Def.'s Statement of Material Facts Not in Dispute ¶¶ 6, 9.)

Compl. ¶ 5.) In her initial interview with an EEO counselor, Rand stated that the "matter" causing her complaint was that she had "requested a desk audit but did not receive the results, therefore she did not receive a promotion." (Def.'s Mot., Ex. 4 at 2.) Rand requested "remedial action": namely, a "retroactive promotion," and back pay "in conjunction" with the promotion. (*Id.* at 3.) Rand's subsequent EEO complaint alleged that the discriminatory action taken against her was the "failure to pay" the "same salary as others in the office for doing the exact same level and difficulty of work." (EEO Compl. at 3.) She was of the view that her supervisor "never saw to it that [she] got the 'accretion of duties' promotion" she deserved. (*Id.*) Within ninety days of receiving a final decision from the EEO, Rand filed suit, and the Secretary has now moved to dismiss or, alternatively, for summary judgment.

## ANALYSIS

I.     **STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In ruling on a 12(b)(6) motion, a court may consider facts alleged in the complaint, documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24-25 (D.D.C. 2010). However, since the Court has considered matters outside the pleadings

(including those submitted by plaintiff) to resolve the Secretary's motion, it will treat defendant's motion as one for summary judgment under Rule 56.

Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to a judgment as a matter of law.'" *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) and Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006)). Plaintiff's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322; Fed. R. Civ. P. 56.

## II. STATUTORY FRAMEWORK

Title VII makes it unlawful for "an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2. The ADEA similarly makes it "unlawful for an employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

623(a)(1). There are "two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985). "[U]ntimely exhaustion of administrative remedies is an affirmative defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Thus, if Rand failed to comply with the EEO's time limits, the Court will dismiss her claims unless she can "plead[] and prov[e] facts supporting equitable avoidance of the defense." *Id.*; *see also, e.g.*, *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 13 (D.D.C. 2010).

An employee of the federal government complaining of discrimination must "initiate contact" with an EEO counselor within forty-five days of the allegedly discriminatory action. 29 C.F.R. § 1614.105(a)(1). The forty-five day period begins to run when an employee has a "reasonable suspicion" of a discriminatory action. *Adesalu*, 606 F. Supp. 2d at 102. "The applicable case law and regulation . . . do not allow a plaintiff to wait until [she] has direct proof of the allegedly discriminatory actions; rather, they require a plaintiff to file an EEO charge even if [she] is not in possession of the 'supportive facts' necessary to prosecute a discrimination charge." *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (quoting *Paredes v. Nagle*, No. 81-1374, 1982 WL 319, at *4 (D.D.C. Jan. 17, 1982)).

Congress was concerned that this system, as interpreted by the Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), "unduly restrict[ed] the time period in which victims of discrimination [could] challenge and recover for discriminatory compensation decisions or other practices." Lilly Ledbetter Fair Pay Act ("Ledbetter Act"), Pub.

L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009). In response, it passed the Ledbetter Act, which deems "each payment" resulting from a discriminatory compensation decision or other practice to be an unlawful employment practice under Title VII or the ADEA.[3] *See Johnson v. District of Columbia*, 632 F. Supp. 2d 20, 21 (D.D.C. 2009). The Ledbetter Act allows plaintiffs to recover "back pay for up to two years preceding the filing of the charge," provided that the "unlawful employment practices" that occurred during the filing period are "similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." Ledbetter Act § 3.

### III. FAILURE TO EXHAUST

#### A. The Desk Audit

The Secretary argues that Rand's claim of discrimination based on the desk audit should be dismissed because "the desk audit issue is not an adverse action upon which" an EEO claim may be based. (Def.'s Mot. at 8.) Rand argues that she exhausted her administrative remedies, but does not respond to the Secretary's argument that failing to provide a desk audit is not an adverse action. (Pl.'s Opp'n at 5.) Therefore, the Court will treat this issue as conceded. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("well understood" in this Circuit that when a plaintiff's "opposition to a dispositive motion . . . addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"). The Court will dismiss Rand's claim that the Secretary discriminated against her by failing to complete a desk audit.

---

[3] "Courts of appeals routinely apply the same standards to evaluate Title VII claims as they do . . . ADEA claims." *Brown v. Brody*, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999), *abrogated on other grounds by Steele v. Schafer*, 535 F.3d 689 (D.C. Cir. 2008). Moreover, the parties' briefing does not distinguish between Rand's claims under Title VII and the ADEA. Therefore, the Court will treat them as one for the purposes of this Memorandum Opinion.

### B. Pay Discrimination

The Secretary argues that Rand's remaining claims must be dismissed because she did not exhaust them. The "administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit. Rather, functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver." *Bowden*, 106 F.3d 437. "[I]t is the defendant's burden to show the plaintiff did not timely contact an EEO counselor." *Miller v. Hersman*, 594 F.3d 8, 13 (D.C. Cir. 2010). According to Rand's EEO complaint, she "first bec[a]me aware of the alleged discrimination" on June 30, 1999, and Rand admits that she was denied a promotion in "late 2000." (Pl.'s Decl. ¶ 6.) Rand did not contact a counselor until August 16, 2002. (EEO Compl. at 2.) Thus, the Secretary has successfully shown that Rand did not timely contact an EEO counselor within the required forty-five day period.

Rand's only argument in response is that her claim is timely under the Ledbetter Act because she alleges pay discrimination. (Pl.'s Opp'n at 5-7.) Rand observes that the Ledbetter Act applies to "all claims of discrimination in compensation under Title VII and the [ADEA], pending on or after May 28, 2007." (*Id.* at 6.) She notes that her claim was pending on that date and argues that the Ledbetter Act "forecloses Defendant's argument that [her] claims are untimely." (*Id.* at 5.) The Court disagrees.

#### 1. The Ledbetter Act

The Secretary argues that the Ledbetter Act does not apply because Rand has not alleged the existence of a discriminatory compensation practice. (Def.'s Mot. at 7.) The Court of Appeals has held that "the decision whether to promote an employee to a higher paying position" is not a "discriminatory compensation decision or other practice" under the Ledbetter Act. *Schuler v. PricewaterhouseCoopers, LLP*, 595 F. 3d 370, 374-75 (D.C. Cir. 2010). The

Ledbetter Act prevents employers from "paying different wages or providing different benefits to similarly situated employees." *Id.* at 374. Therefore, it is not implicated when a company makes a decision to "promote one employee but not another to a more remunerative position." *Id.* Following *Schuler*, two other judges on this Court have held that failing to grant a promotion on the GS scale "was not a 'discriminatory compensation decision or other practice.'" *Johnson v. Vilsack*, No. 04-1609, 2011 WL 4527065, at *6 n.7 (D.D.C. Sept. 30, 2011) (Sullivan, J.); *Lipscomb v. Mabus*, 699 F. Supp. 2d 171, 174 (D.D.C. 2010) (Bates, J.); *see also Canaday v. Wynne*, No. 09-247, 2010 WL 2688065, at *10 (N.D. Fla. Apr. 26, 2010) (decision not to grant plaintiff temporary promotion to GS-12 did not implicate Ledbetter Act).

Rand seeks to distinguish *Schuler, Johnson* and *Lipscomb* by arguing that she already did the work of a GS-14 employee and was denied commensurate title and pay. (Am. Compl. ¶ 7.) Rand alleges that the Secretary "had no legitimate, non-discriminatory reason for paying plaintiff less than her grade 14 co-workers." (Am. Compl. ¶ 7.) Essentially, she argues that she was denied a promotion in order to prevent her from receiving the same compensation as her younger, male co-workers. Thus, on its face, Rand's complaint appears to allege discriminatory compensation. *See Ledbetter*, 550 U.S. at 623 ("Title VII . . . makes it an 'unlawful employment practice' to discriminate 'against any individual with respect to his compensation . . . because of such individual's . . . sex"). The government counters that Rand's compensation-related claims "are directly tied to her over-arching concern that she should have been elevated from a GS-13 to a GS-14, either through a non-competitive promotion or through a desk audit." (Def.'s Reply at 3.)

Despite her artful pleading, the gravamen of Rand's claim is her failure to obtain a promotion, and this characterization is consistent with the case law in this jurisdiction. The

Court of Appeals has previously treated a case with similar facts as claiming "discriminatory refusal to promote." *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003). In *Taylor*, the plaintiff "claimed she was denied a promotion" because of her race, and "with her current responsibilities, she should have received an increase in grade and salary." *Id.* The Court found that the plaintiff was required to "show that she sought and was denied a promotion for which she was qualified" and that "other employees of similar qualifications" were promoted "at the time the plaintiff's request for promotion was denied" in order to "make out a prima facie case of discriminatory refusal to promote." *Id.* (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)); *see also Bolden v. Winter*, 602 F. Supp. 2d 130, 137 (D.D.C. 2009) (*Taylor* applied "where the plaintiff sought only an increase in grade and pay and not promotion to a vacant position").[4] Rand has not alleged any facts that distinguish her case from *Taylor*. The only discriminatory act Rand alleges is her supervisor's failure to promote her.[5]

---

[4] Other cases with similar facts have also proceeded as discrimination claims based on a nonpromotion. *See Montgomery v. Chao*, 546 F.3d 703, 705 (D.C. Cir. 2008) (plaintiff alleged discrimination based on nonpromotion after he was asked perform certain duties, formally "requested a promotion to grade GS-13 based on accretion of duties," and was denied); *Perry v. Donovan*, 733 F. Supp. 2d 114, 119 (D.D.C. 2010) (plaintiff alleged adverse employment action for failure to promote where she "requested a desk audit and presented sufficient evidence to be considered for promotion"); *Schrader v. Tomlinson*, 311 F. Supp. 2d 21, 27-28 (D.D.C. 2004) (although plaintiff alleged she was paid less than a male employee, her claim under the Equal Pay Act "[could] be construed as a complaint about not being promoted to a GS-13 position and not receiving GS-13 pay"); *Williams v. Munoz*, 106 F. Supp. 2d 40, 42-43 (D.D.C. 2000) (plaintiff alleged discriminatory nonpromotion where plaintiff's paychecks were allegedly "less than she would have been paid had she been promoted"). *But see Wiggins v. Powell*, No. 02-1774, 2005 WL 555417, at *14 (D.D.C. Mar. 7, 2005) (plaintiff alleged Equal Pay Act violation where he claimed "unequal pay for equal work" based on denial of request for accretion of duties promotion).

[5] Rand's interactions with the EEO suggest that she also viewed her claim as one for failure to promote. The report filed by her EEO counselor stated that Rand brought her complaint because she "requested a desk audit but did not receive the results, therefore she did not receive a promotion," and that she sought a "retroactive promotion" and back pay "in conjunction" with that promotion. (Def.'s Mot., Ex. 4 at 2-3.)

Rand cannot invoke the Ledbetter Act because, if she could, any government employee could circumvent *Schuler* simply by relabeling their nonpromotion claims. The Circuit defined "discrimination in compensation" as "paying different wages or providing different benefits to similarly situated employees," as opposed to a "decision whether to promote an employee to a higher paying position," which is "not a 'compensation decision or other practice' within the meaning of that phrase." *Schuler*, 595 F.3d at 374-75. Rand's case resembles the latter far more than the former. She sought a promotion to a higher-paying position to reflect her increased workload, requested a desk audit when her supervisor refused to promote her, then filed a lawsuit alleging discriminatory compensation when it became clear that no desk audit had taken place. Rand essentially alleges that her supervisor wrongly decided not to promote her, that this error was not corrected, and that as a result, she was denied appropriate compensation. If the Ledbetter Act could revive this claim, any government employee denied an accretion of duties promotion could simply recast her claim as one for pay discrimination in order to evade *Schuler*.

In addition, the legislative history of the Ledbetter Act demonstrates that Congress did not intend it to protect claims like Rand's from exhaustion requirements. *See Johnson*, 2011 WL 4527065, at *6 n.7. The House Committee on Education and Labor reported that "pay discrimination is incredibly difficult to detect" because employees are often "prohibit[ed] . . . from discussing their wages with co-workers" and because there is "often no clearly adverse employment event that occurs with a discriminatory pay decision." H.R. Rep. No. 110-237, at 7 (2007). Thus, the Committee found, a rule requiring victims of pay discrimination to file "within 180 days of the initial discriminatory pay decision" would "ignore[] . . . reality." *Id.* The discrimination Rand alleges was clearly linked to an adverse employment event. Rand admits that she was aware that she was paid less than her GS-14 co-workers and that she repeatedly

sought a promotion. (EEO Compl. at 3.) Although she believed that the desk audit process was ongoing, she knew that she had not yet been awarded an accretion of duties promotion and would have known if her pay had increased. Thus, distinguishing between pay discrimination and the discriminatory refusal to grant an accretion of duties promotion is "fully consistent with the patent intent of the Congress" and the purposes of the Ledbetter Act. *Schuler*, 595 F.3d at 375.

The Court therefore concludes that the only discriminatory act Rand alleges was the failure to grant her a promotion based on her accretion of duties. Under *Schuler,* her claims are not revived by the Ledbetter Act. *Id.* Therefore, the Secretary is entitled to summary judgment.[6]

## CONCLUSION

For the foregoing reasons, the Secretary's Motion for Summary Judgment will be granted. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: October 6, 2011

---

[6] Rand has identified no material facts as to which there are genuine issues. (*See* Pl.'s Issues.) Two of the three "material facts" that she presents relate to her claim that she was denied a desk audit, which the Court has dismissed. *See supra* Part III.A. Rand's third issue is whether she was paid less than her similarly situated co-workers for equal work. (Pl.'s Issues ¶ 2.) However, even assuming that the facts Rand alleges are true, the Court has dismissed her claim because it was not properly exhausted. Thus, no issues of material fact prevent the Court from granting summary judgment.